AMERICAN SMELTING & REFINING CO. *v.* UNITED STATES (No. 590).[1]

BY-PRODUCT OF LEAD BULLION REFINED IN ·BONDED WAREHOUSE.

Roughly smelted lead bullion, imported and deposited in the bonded smelting warehouse of the importer; later refined, precious metals and a percentage of refined lead being extracted and leaving a by-product of lead, antimony, and other substances; this by-product is not to be deemed bullion, but type metal, and when this is withdrawn from the bonded warehouse for domestic consumption it is dutiable under paragraph 191, tariff act of 1909.

United States Court of Customs Appeals,·October 12, 1911.

APPEAL from Board of United States General Appraisers G. A. 7148 (T. D. 31201).

[Reversed.]

*Brown & Gerry* (*James L. Gerry* of·counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain lead bullion was imported at the port of Perth Amboy, N. J., and was subsequently smelted and refined under bond. A lead product resulting from the smelting and refining was withdrawn for domestic consumption and was assessed for duty by the collector of customs as lead bullion at $2\frac{1}{8}$ cents per pound under the provisions of paragraph 182, and as provided in section 24 of the tariff act of August 5, 1909, the material parts of which paragraph and section are as follows:

182. Lead dross, lead bullion or base bullion, lead in pigs and bars, lead in any form not specially provided for in this section, old refuse lead run into blocks and bars, and old scrap lead fit only to be remanufactured; all the foregoing, two and one-eighth cents per pound; * * *.

SEC. 24. That the works of manufacturers engaged in smelting or refining, or both, of ores and crude metals, may upon the giving of satisfactory bonds be designated as bonded smelting warehouses. Ores or crude metals may be removed from the vessel or other vehicle in which imported, or from a bonded warehouse,·into a bonded smelting warehouse without the payment of duties thereon and there smelted or refined, or both, together with other ores or crude metals of home or foreign production: *Provided,* That the several charges against such bonds may be canceled upon the exportation or delivery to a bonded manufacturing warehouse, established under section twenty-three of this act, of the actual amount of lead produced from the smelting or refining, or both, of such ores or crude metals: *And provided further,* That said lead may be withdrawn for domestic consumption or transferred to a bonded customs warehouse and withdrawn therefrom upon the payment of the duties chargeable against it in that condition: *Provided further,* That all labor performed and services rendered pursuant to this section shall be under the supervision of an officer of the customs, to be appointed by the Secretary of the Treasury, and at the expense of the manufacturer: *Provided further,* That all regulations for the carrying out of this section shall be prescribed by the Secretary of the Treasury.

Reported in T D. 31955 (21 Treas. Dec., 406).

The American Smelting & Refining Co., which imported and re-
fined the lead bullion, protested that the product resulting from the
refining of said bullion was not lead bullion but type metal, and that
therefore, in accordance with the provisions of section 24, it was
dutiable at 1½ cents per pound on the lead contained therein, as pro-
vided by paragraph 191, which reads as follows:

191. Type metal, one and one-half cents per pound on the lead contained therein;
new types twenty-five per centum ad valorem.

The Board of General Appraisers overruled the protest and the
importers appealed.

From the report of the collector of customs, the testimony in the
case, and the findings of the board, it appears that the importation
was one of crude metal in the form of lead bullion, which had been
roughly smelted at Monterey, Mexico, and shipped from Tampico,
Mexico, to the United States. On arrival at destination the lead
bullion was removed to the bonded smelting warehouse of the
importers without the payment of duties and there subjected to a
refining process which, as found by the board, extracted therefrom
the precious metals and a percentage of refined lead, leaving a
residuum or by-product, of which, on the average, 81 per cent was
lead, 17 per cent antimony, and 2 per cent other substances, such as
arsenic, copper, and silver. This residuum or by-product was with-
drawn for domestic consumption, and is the article which the col-
lector classified as antimonial lead dutiable at 2⅛ cents per pound
under paragraph 182, by reason of the provisions of section 24, and
which the board decided was dutiable as lead bullion at the same rate
under the same paragraph and section . On this state of facts there is
but one question presented by this appeal, and that is, What con-
struction should be put upon section 24, and particularly upon that
part of it dealing with lead withdrawn for domestic consumption?
That section provides in effect:

First. That *manufacturers* engaged in the smelting or refining of ores
and crude metals may secure the designation of their works as bonded
smelting warehouses by giving satisfactory bonds.

Second. That imported ores and crude metals may be transferred
to such bonded smelting warehouses without the payment of duties
and there smelted or refined, or both, together with other ores or crude
metals of home or foreign production.

Third. That the several charges against such bonds may be can-
celed upon the exportation or delivery to a bonded manufacturing
warehouse established under section 23 of the act of the actual
amount of lead produced from the smelting or refining, or both, of
such ores or crude metals.

Fourth. That said lead may be withdrawn for domestic consump-
tion upon payment of the duties chargeable against it *in that condition.*

It seems to us that these provisions indicate with a fair degree of clearness that lead produced in bonded smelting warehouses by the smelting or refining of imported ores or crude metals may be withdrawn for domestic consumption upon the payment of the duties chargeable against it in its smelted or refined condition.   Instead of making the withdrawal of such lead dependent upon the payment of the duties which attached to it in its imported condition Congress explicitly provided that it might be withdrawn on the payment of the duties chargeable against it "in that condition," that is to say, the condition in which it was found after smelting or refining or both. Now, what was the smelted or refined condition of the lead product withdrawn for domestic consumption?   Was it a lead bullion or a base bullion?   We think not—certainly not if bullion is to receive its definite and recognized meaning.   The term "bullion" means a mixture of metals of which gold or silver or both are constituent parts, and if used without qualifying words signifies in this country a mixture of gold and silver in the form of bars, plates, or ingots. Base bullion is a combination of a base metal with gold or silver or both.   Lead bullion is a base bullion and is made up of the base metal lead and gold or silver or both.   (Standard Dictionary; Century Dictionary; Notes on Tariff Revision, par. 182.)   The board found that the smelting of the lead bullion imported resulted in the extraction from it of the gold and silver which it contained.   What was left after smelting, namely, the product under discussion, could not therefore have contained gold or silver, certainly not in an appreciable amount, otherwise mention of one or both of these precious metals would have been made in the report of the official analysis.   Consequently it would seem that the product withdrawn for domestic consumption was not a bullion, and that the finding of the board that it was dutiable as lead bullion or base bullion was not warranted by its status at the time of withdrawal, when duties became chargeable against it, not in its imported but in its smelted condition.

According to the chemical analysis the article assessed for duty contains on the average 81 per cent of lead and 17 per cent of antimony, thus accounting for 98 per cent of the component materials, and leaving 2 per cent unaccounted for, which, in all probability, consists of negligible quantities of other metals, such as arsenic, copper, and silver.   Such a mixture of lead and antimony, even if it contain a small percentage of arsenic, copper, and silver, is, according to the uncontradicted testimony, a type metal.   It falls within the definition of type metal as announced by the board in T. D. 28511, it is the article which since 1907 has been admitted by the customhouse as type metal, it was bought and sold in this case as type metal, it is admitted by the Government to be type metal, and in our opin-

ion it is a type metal.    Type metal is lead in a form specially provided for in paragraph 191, and we think therefore that the product in controversy is, by virtue of the second proviso to section 24, subject to the duty prescribed by that paragraph.    Section 23 provides that by-products incident to the processes of manufacture in bonded manufacturing warehouses may be withdrawn for domestic consumption upon the payment of a duty equal to the duty which would be assessed and collected by law if such by-products were imported from a foreign country.    It seems to us that the second proviso of section 24 had a similar purpose in view, and that it was designed and intended by Congress to put lead products resulting from the smelting or refining of ores or crude metals in bonded smelting warehouses in the same position with respect to duty as by-products of bonded manufacturing warehouses and in no worse position than imported materials of the same kind.    Certainly it would be anomalous that the by-product of a bonded smelting warehouse should be made dutiable on a basis different from that fixed for the by-products of bonded manufacturing warehouses.

The decision of the Board of General Appraisers is *reversed*.